# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KRISTY S.,[1] | : | Case No. 3:22-cv-00332 |
| Plaintiff, | : : | District Judge Michael J. Newman |
| vs. | : : | Magistrate Judge Caroline H. Gentry |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : | |
| Defendant. | : : | |

---

## REPORT AND RECOMMENDATION[2]

---

Plaintiff filed an application for Disability Insurance Benefits (DIB) on January 17, 2019. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Laura Chess concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. ("Decision," Doc. No. 8-2 at PageID45-73.) The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court

---

[1] See S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] See 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## I.    BACKGROUND

Plaintiff initially filed an application for DIB on February 11, 2015. After the claim was denied at the initial and reconsideration levels, ALJ Stuart Adkins issued an unfavorable decision on March 12, 2018. ("Prior Decision," Doc. No. 8-3 at PageID 109-36.) The Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff subsequently filed an action with this Court.[3] The Court affirmed the March 12, 2018 administrative decision. (Administrative Record ("AR"), Doc. No. 8-3 at PageID 183-88.)

Plaintiff filed a new DIB application on January 17, 2019 and asserted that that she had been under a disability since January 9, 2014. ALJ Adkins' decision became final and binding with regard to the period considered in that decision, and ALJ Chess explained that the period at issue for the new application began March 13, 2018. (Decision, Doc. No. 8-2 at PageID 48-49). Plaintiff was thirty-eight years old as of March 13, 2018, and she was thirty-nine years old as of her date last insured of December 31, 2018.[4] Accordingly, Plaintiff was considered a "younger person" under Social Security regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

---

[3] Assigned to Judge Michael J. Newman, Case Number 3:18-cv-00377.

[4] A claimant must establish disability on or before the date last insured in order to be entitled to a period of disability and disability insurance benefits. Accordingly, the relevant period in this case is from March 13, 2018 to December 31, 2018. Plaintiff does not dispute this issue.

2

The evidence in the Administrative Record (AR, Doc. No. 8) is summarized in the ALJ's decision (Decision, Doc. No. 8-2 at PageID 45-73), Plaintiff's Statement of Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 11), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may

3

not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even

4

if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.   FACTS

### A.   The ALJ's Factual Findings

ALJ Chess was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

Step 1:    Plaintiff did not engage in substantial gainful activity during the relevant period from March 13, 2018 to the date last insured of December 31, 2018.

Step 2:    She had the severe impairments of degenerative disc disease, fibromyalgia, bilateral sensorineural hearing loss, asthma, obesity, diabetes mellitus, migraine headaches, depressive disorder, anxiety disorder, and post-traumatic stress disorder.

Step 3:    She did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of a range of sedentary to light work as defined in 20 C.F.R. § 404.1567(a) and (b). The ALJ limited Plaintiff to: (1) lifting and/or carrying up to 20 pounds occasionally and ten pounds frequently; (2) standing and/or walking a combined total of about four hours during an eight-hour workday; (3) sitting for a total of six hours during an eight-hour workday; (4) pushing and/or pulling at the same exertion level; (5) allowance for the opportunity to alternate between sitting and standing every 30 minutes while remaining at the workstation; (6) the capacity to use a cane when standing and ambulating; (7) no climbing of ladders, ropes, or scaffolds; (8) no more than occasional climbing of ramps or stairs; (9) no more than occasional balancing; (10) no more than

5

occasional stooping, kneeling, crouching, or crawling; (11) avoidance of concentrated exposure to vibration; (12) avoidance of concentrated exposure to dust, odors, fumes, or pulmonary irritants; (13) avoidance of all exposure to unprotected heights, dangerous machinery, and commercial driving; (14) limited to working in an environment with no more than a moderate noise level as defined in the *Selected Characteristics of Occupations* (SCO) as published by the U.S. Department of Labor; (15) limited to performing simple tasks performed at a moderate pace; (16) no more than occasional interaction with co-workers, supervisors, and the general public; (17) able to respond appropriately to routine changes in the workplace.

She was unable to perform any of her past relevant work.

Step 5:     Through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed.

(Decision, Doc. No. 8-2 at PageID 52-67.) These findings led the ALJ to conclude that

Plaintiff did not meet the definition of disability and so was not entitled to benefits. (*Id.* at

PageID 67.)

**B.     The ALJ's Decision**

**1.     *The ALJ's Consideration Of The Prior ALJ's Findings***

In the Jurisdiction and Procedural History section, ALJ Chess explained the

impact of ALJ Adkins' prior unfavorable decision:

Pursuant to Acquiescence Rulings 98-3(6) and 98-4(6), ***absent new and material evidence documenting a significant change in a claimant's condition, a residual functional capacity and other findings include [sic] those findings pertaining to past relevant work made in a prior hearing decision by an administrative law judge are binding on the present adjudicator provided that the new claim arises under the same title of the Social Security Act.*** The prior decision of March 12, 2018, included, inter alia, the following findings (see Exhibit B1A):

•    [Plaintiff] had "severe" impairments of degenerative disc disease, fibromyalgia, asthma, obesity, diabetes mellitus, depressive disorder,

6

anxiety disorder;

- [Plaintiff] had the residual functional capacity for a reduced range of light-exertion work;

- [Plaintiff] was unable to perform past relevant work;

- [Plaintiff] could perform a significant number of other jobs existing in the national economy. (On this basis, [Plaintiff] was found to be not "disabled" and her application for benefits was denied.)

The current evidence of record shows that [Plaintiff's] condition has changed somewhat since the issuance of the prior decision on March 12, 2018. For example, after the issuance of the last decision, but before the expiration of [Plaintiff's] Title II insured status, bilateral hearing loss was confirmed by testing and diagnosed. [Plaintiff] was fitted for hearing aids. She was also diagnosed with post-traumatic stress disorder (PSTD) and she was treated for a headache disorder. (Headaches were found to be a "non-severe" impairment in the prior decision of March 12, 2018 – see Exhibit B1A at 10.) [Plaintiff] testified at the most recent hearing that her headaches became worse in March or April 2018. She testified that she first needed hearing aids in 2018 and that her hearing has declined even more since 2018.

(Decision, Doc. No. 8-2 at PageID 49 (emphasis added).)

ALJ Chess subsequently explained that she adopted ALJ Adkins' RFC,

with some modification:

In view of these circumstances, and relevant to the applicability of AR 98-4(6), I find that the previously imposed residual functional capacity remained largely accurate through the Title II date last insured with the exception that [Plaintiff] was limited to working in an environment with a "moderate" noise level as defined in the Specific Characteristics of Occupations as published by the Department of Labor due to headaches and hearing loss. ***The finding pertaining to residual functional capacity made in the prior final and binding decision of March 12, 2018, continues to otherwise be applicable in general and is adopted herein (although with some modification for the reason detailed above) pursuant to AR 98-4(6) (as explained at Finding No. 5).*** The finding pertaining to [Plaintiff's] inability to do past relevant work continues to be applicable and is adopted

7

herein pursuant to AR 98-3(6) (see Finding No. 6).

(*Id.* at PageID 49-50 (emphasis added).)

ALJ Chess analyzed updated evidence regarding Plaintiff's physical and mental impairments before she adopted the limitations in ALJ Adkins' prior RFC. (Decision, Doc. No. 8-2 at PageID 53-55.) This new evidence included the opinions of state agency psychological consultants who did not adopt ALJ Adkins' prior mental findings because they believed that new and material evidence showed that Plaintiff was more limited than ALJ Adkins previously found. (*Id.* at PageID 56-57 (citing AR, Doc. No. 8-3 at PageID 146-47, 151-53, 164-65, 168-70).) These consultants opined that Plaintiff was moderately limited in all four "Paragraph B" areas of functioning, whereas ALJ Adkins found only mild limitation in the area of understanding, remembering, or applying information and no limitation in the area of adapting or managing oneself. (Decision, Doc. No. 8-2 at PageID 56-57 (citing AR, Doc. No. 8-3 at PageID 123, 146-47, 164-65).)

Notably, ALJ Chess explained that she agreed with the psychological consultants' "Paragraph B" findings:

> Consistent with the finding made in the prior decision as well as the conclusions reached by Dr. Zeune and Dr. Murry-Hoffman, I find that [Plaintiff] experiences "moderate" limitation in her ability to interact with others. This conclusion is also consistent with the opinion evidence presented by Dr. Boerger. Any more egregious level of limitation is not supported by persuasive evidence through the Title II date last insured.
>
> Likewise, I find that [Plaintiff] experiences "moderate" limitation in her ability to concentrate, persist, or maintain pace. This finding is consistent with the finding made in the prior decision as well as the conclusions reached by Dr. Zeune and Dr. Murry-Hoffman. It is also consistent with the opinion evidence presented by Dr. Boerger.

> Finally, I find that the conclusion reached in the prior decision that [Plaintiff] experiences no limitation in her capacity to adapt and manage oneself is no longer applicable. Rather, I find that [Plaintiff] experiences "moderate" limitation in her ability to adapt and manage oneself. She had sufficient mental acuity to operate a motor vehicle and to deal with the exigencies of day-to-day living during the period of time at issue. However, a "moderate" degree of limitation in this particular area of mental functioning is consistent with the findings made by both Dr. Zeune and Dr. Murry-Hoffman. It also reflects the conclusion of examining psychologist Dr. Boerger that [Plaintiff] has reduced ability to deal with work pressures in a work setting (Exhibit B8F at 7).

(Decision, Doc. No. 8-2 at PageID 57-58.)

> Nevertheless, ALJ Chess found the consultants' opinions only partially persuasive:

> I find the opinion evidence of Dr. Murry-Hoffman and Dr. Zeune to be partially persuasive. This is because the examination conducted by Dr. Boerger and his diagnosis of post-traumatic stress disorder (made shortly after the expiration of [Plaintiff's] Title II disability insured status) did constitute new and material evidence. However, despite the "moderate" degree of functional limitation found to exist by both DDD reviewing psychologists in all four areas of mental functioning (versus the less restrictive degrees of limitation found to exist in the prior decision), I conclude that no material changes to the specific work-related limitations in the residual functional capacity are warranted.

(Decision, Doc. No. 8-2 at PageID 57.) The ALJ also found that "[t]he findings of examining psychologist Dr. Boerger are somewhat persuasive but his examination was not conducted until after the Title II date last insured." ALJ Chess did not provide any additional explanation to support her adoption of ALJ Adkins' mental limitations. (*Id.*)

Next, ALJ Chess addressed the physical limitations in the RFC. (Decision, Doc. No. 8-2 at PageID 61-63.) ALJ Chess noted that Dr. Das, the state agency medical consultant who reviewed the record at the initial level, opined that Plaintiff was capable of standing and walking for longer than ALJ Adkins found. (*Id.* at PageID 62.) The ALJ

concluded that the opinion of Dr. Sreenivas, the reviewer at the reconsideration level who

"adopted the [RFC] assessment established in the prior decision pursuant to AR 98-4(6),"

was more persuasive than Dr. Das' opinion. (*Id.* at PageID 62.) The ALJ found that the

evidence did not support a finding that Plaintiff's exertional capacity improved between

March 13, 2018 (the earliest potential disability date) and December 31, 2018 (the Title II

date last insured), and adopted ALJ Adkins' RFC. (Decision, Doc. No. 8-2 at PageID 62.)

### 2.    *State Agency Medical Consultants*

State agency medical consultant Elizabeth Das, M.D. completed a physical RFC

assessment in May 2019. (AR, Doc. No. 8-3 at PageID 148-50.) Dr. Das opined that

Plaintiff could lift and/or carry up to twenty pounds occasionally and ten pounds

frequently, stand and/or walk for approximately six hours in an eight-hour workday, and

sit for approximately six hours in an eight-hour workday. (*Id.* at PageID 149.) According

to Dr. Das, Plaintiff could never climb ladders, ropes, or scaffolds. (*Id.*) She opined that

Plaintiff could frequently balance and occasionally climb ramps and stairs, stoop, kneel,

crouch, and crawl. (*Id.*) Dr. Das further opined that Plaintiff needed to avoid working at

unprotected heights and operating hazardous machinery, and that she needed to avoid

concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (*Id.* at PageID

150.)

Venkatachala Sreenivas, M.D. reviewed the updated record at the reconsideration

level in September 2019. (AR, Doc. No. 8-3 at PageID 166-68.) Dr. Sreenivas explained

that she adopted the limitations in ALJ Adkins' decision pursuant to AR 98-4(6) because

the record showed no new or material changes since that time. (*Id.* at PageID 167.) Dr.

10

Sreenivas opined that Plaintiff was more limited in the ability to stand and walk than Dr. Das had opined, and limited Plaintiff to standing and/or walking for a total of four hours in an eight-hour workday. (*Id.* at PageID 166.) Dr. Sreenivas also limited Plaintiff to occasional (versus frequent) balancing, but otherwise adopted the limitations suggested by Dr. Das. (*Id.* at PageID 167.)

ALJ Chess concluded that Dr. Sreenivas' opinion was "more persuasive" than Dr. Das' opinion because "[t]here is no compelling evidence to support a finding of medical improvement in [Plaintiff's] capacity to stand and walk as suggested by Dr. Das." (Decision, Doc. No. 8-2 at PageID 62.)

## IV. LAW AND ANALYSIS

Plaintiff asserts that the ALJ reversibly erred by: 1) "using the wrong legal standard and relying on flawed opinion evidence, thus creating an unwarranted additional procedural burden for [Plaintiff] to overcome"; and 2) "failing to properly evaluate the prior administrative medical findings for supportability and consistency as required by 20 C.F.R. § 404.1520c." (SE, Doc. No. 9 at PageID 4202.) For the reasons discussed below, Plaintiff's arguments are well-taken and the ALJ's decision should be reversed.

### A. The ALJ Erred When Considering The Prior ALJ's Findings

Until recently, the leading Sixth Circuit case on the application of res judicata to claims for Social Security benefits was *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). The *Drummond* court broadly held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* at

11

842 (citations omitted). The SSA issued an Acquiescence Ruling that applies the

*Drummond* holding to all administrative proceedings in the Sixth Circuit:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim . . . unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 63 Fed. Reg. 29,771, 29,773, 1998 WL 283902, 1998 SSR LEXIS 5, at *3

(June 1, 1998). ALJ Chess cited and relied upon this SSAR in her decision.

In 2018, however, the Sixth Circuit limited the scope of *Drummond*. In *Earley v.*

*Commissioner of Social Security,* 893 F.3d 929 (6th Cir. 2018), the court explained that

"unusual facts" in *Drummond* had "led to some overstatement" about res judicata. *Id*. at

933. The court acknowledged that res judicata only precludes bringing the same claim

again—and further acknowledged that a claim of disability during a later time period is

different from a claim of disability during an earlier time period. *Id*. The Sixth Circuit

reasoned that "human health is rarely static. . . . Sometimes we become sick and

sometimes we become better as time passes." *Id*. Thus, "[a]ny earlier proceeding that

found or rejected the onset of a disability could rarely, if ever, have 'actually litigated and

resolved' whether a person was disabled at some later date." *Id*.

Clarifying its standard in *Drummond*, the *Earley* court held that "[a]n individual

may file a second application—for a new period of time—for all manner of reasons and

obtain independent review of it so long as the claimant presents evidence of a change in

condition or satisfies a new regulatory threshold." *Earley*, 893 F.3d at 932. The court

explained that although "an applicant remains free to bring a second application that introduces no new evidence or very little new evidence after a failed application. . . . she should not have high expectations about success" because "[w]hat's past likely will be precedent in that setting." *Id*. at 933-34. Cautioning that "[f]resh review is not blind review," the Sixth Circuit held that "it is fair for an [ALJ] to take the view that, ***absent new and additional evidence, the first [ALJ's] findings are a legitimate, <u>albeit not binding</u> consideration***[.]" *Id.* at 933-34 (emphasis added).

Therefore, *Earley* held that an ALJ who adjudicates a subsequent application for benefits for a later time period should conduct a "fresh review" and may[5] consider, but will not be bound by, a prior ALJ's decision to deny benefits for an earlier time period. The question that *Earley* did not address, and that district courts have grappled with, is whether ALJs may ***presume*** that a decision that a claimant was not disabled during an earlier time period remains true for later time periods—and simply analyze whether the newly submitted evidence or a new regulatory threshold rebuts that presumption.

In accordance with the decisions of other judges in this district, the undersigned concludes that the "fresh review" mandated by *Earley* does not permit ALJs to presume that the prior denial of a disability claim will dictate the outcome of later applications for benefits. *E.g., Amber G. v. Comm'r of Soc. Sec.*, No. 3:23-cv-41, 2023 U.S. Dist. LEXIS 146969, *11 (S.D. Ohio Aug. 21, 2023) (Vascura, M.J.); *Nadia A.T. v. Comm'r of Soc.*

---

[5] Although *Earley* does not require ALJs to consider prior ALJ decisions, district courts in the Sixth Circuit "have consistently and repeatedly remanded cases where an ALJ failed to acknowledge or discuss a prior disability determination." *Showman v. Berryhill*, No. 1:17-cv-02017, 2018 U.S. Dist. LEXIS 144461, *27 (N.D. Ohio Aug. 9, 2018).

*Sec.*, No. 3:22-cv-12, 2023 U.S. Dist. LEXIS 39397, *10-12 (S.D. Ohio Mar. 7, 2023) (Silvain, M.J.); *Maynard v. Comm'r of Soc. Sec.*, No. 2:18-cv-959, 2019 U.S. Dist. LEXIS 124239, *16-19 (S.D. Ohio July 25, 2019) (Jolson, M.J.).

A presumption is "[a] legal inference or assumption that a fact exists because of the known or proven existence of some other fact or group of facts." Black's Law Dictionary (11th ed. 2019). Although the Sixth Circuit anticipated that ALJs would consider prior unfavorable decisions—and predicted that "[w]hat's past likely will be precedent" for claimants who do not offer new evidence to support later applications—it did not direct ALJs to assume that if benefits were denied in the past, they will also be denied in the future. *Earley*, 893 F.3d at 933-34. To the contrary, because "human health is rarely static," the Sixth Circuit held that a disability application for a later time period constitutes a different claim (and, therefore, res judicata does not apply). *Id.* at 933. The Sixth Circuit's reasoning—that "sometimes we become sick and sometimes we become better" (*id.*)—confirms that ALJs should not presume that the denial of a prior application means that later applications should also be denied.

Thus, this Court holds that although ALJs may (and should) consider a prior ALJ decision, they may not use that prior decision as a starting point for their analysis or otherwise presume that it will dictate the outcome of the pending application. *See, e.g., Ferrell v. Berryhill*, No. 1:16-CV-00050, 2019 WL 2077501, at *5 (E.D. Tenn. May 10, 2019) ("The point of *Earley*, in this Court's opinion, is that regardless of her chances of success, an applicant should have the opportunity for a full hearing, with no presumptions applied, when the claim covers a new period of time not addressed in the prior hearing.");

14

*Dunn v. Comm'r of Soc. Sec.*, No. 1:17-CV-634, 2018 WL 4574831, at *3 (W.D. Mich. Sept. 25, 2018) ("In performing this analysis, ALJ Jones' decision was essentially a review of ALJ Moscow Michaelson's RFC findings . . . rather than a 'fresh review' of plaintiff's 'new application for a new period of time.'"); *Gale v. Comm'r of Soc. Sec.*, No. 1:18-CV-859, 2019 WL 8016516, at *5 (W.D. Mich. Apr. 17, 2019), *report and recommendation adopted*, No. 1:18-CV-859, 2020 WL 871201 (W.D. Mich. Feb. 21, 2020) ("In sum, *Earley* stands for the proposition that when an ALJ evaluates a subsequent application for benefits, covering a distinct period of time, the ALJ can properly consider a previous ALJ's RFC assessment and errs only when he considers the previous RFC a mandatory starting point for the analysis."); *Dilauro v. Comm'r of Soc. Sec.*, No. 5:19 CV 2691, 2020 WL 9259708, at *10 (N.D. Ohio Nov. 19, 2020), *report and recommendation adopted*, No. 5:19-CV-2691, 2021 WL 1175415 (N.D. Ohio Mar. 29, 2021) (finding that the ALJ erred by presuming that the prior RFC remained accurate and reviewing the new medical evidence from that perspective).

### 2. The ALJ Did Not Conduct The "Fresh Review" Required by Earley.

Plaintiff's application covers a period of time (March 13, 2018 to December 31, 2018) that the prior ALJ did not consider. Plaintiff submitted new evidence about her impairments during this period. The ALJ reviewed and provided a detailed summary of this new evidence. (*See* Decision, Doc. No. 8-2 at PageID 53-58, 61-64.)

Plaintiff argues that ALJ Chess improperly considered this new evidence "against the backdrop of the previous ALJ's 2018 findings, frequently referencing those previous

findings throughout her decision and framing her review of the evidence as a question of whether it supported a departure from the previous ALJ's RFC." (SE, Doc. No. 9 at PageID 4206.) The Court agrees and holds that the ALJ applied the wrong legal standard when considering the new evidence submitted for this time period, thus depriving Plaintiff of the "fresh look" required by *Earley*. (*See* SE, Doc. No. 9 at PageID 4206-09; Reply, Doc. No. 12 at PageID 4233-40.)

It is plain that ALJ Chess did not simply view ALJ Adkins' prior decision as a "legitimate, albeit nonbinding consideration," but instead used it as the basis for her own analysis. *Earley*, 893 F.3d at 933. For example, although ALJ Chess found the opinions of the state agency psychological consultants partially persuasive, and agreed that new evidence supported findings of moderate limitation in all four "Paragraph B" areas of functioning, the ALJ did not adopt their suggested limitations. (Decision, Doc. No. 8-2 at PageID 57.) Her explanation, to the extent that she gave one, was that she deferred to ALJ Adkins' decision: "I conclude that no material changes to the specific work-related limitations in [ALJ Adkins' RFC] are warranted." (*Id.*) Similarly, AL Chess evaluated Dr. Das' and Dr. Sreenivas' opinions against the backdrop of ALJ Adkins' decision and concluded that there was no "significant change in [Plaintiff's] exertional capacity from the level found to be applicable prior to March 13, 2018." (*Id.*)

The ALJ's reasoning shows that she did not give Plaintiff the benefit of a fresh review, without a presumption that the earlier decision remained correct. Since the ALJ applied the incorrect legal standard, remand is warranted. *Earley*, 893 F.3d at 934.

16

### 3. *The ALJ's Error Is Not Harmless.*

Defendant argues that even if the ALJ applied the wrong legal standard, the error is harmless because "Plaintiff does not present any information or argument to show that the ALJ's conclusion is wrong." (Mem. in Opp., Doc. No. 11 at PageID 4228.) But an error of law requires reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018). In *Earley*, for example, the Sixth Circuit required a remand without considering whether the outcome under the correct standard would be different. 893 F.3d at 934 ("The ALJ should have another opportunity to review the application under the correct standard."). Here, too, the appropriate remedy is a remand.

### B. The ALJ Reversibly Erred When Evaluating The Findings Of The State Agency Medical Consultants

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not

defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors—supportability and consistency—are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[6] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

### 2. The ALJ's Supportability and Consistency Analysis Did Not Comply With The Applicable Regulations.

ALJ Chess failed to explain her consideration of the supportability and consistency factors of the state agency medical consultants' opinions, as required by 20

---

[6] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

C.F.R. § 404.1520c(c)(2). The ALJ found Dr. Sreenivas' assessment more persuasive because "[Dr. Sreenivas] adopted the functional capacity assessment made in the prior decision (including more restrictive capacity for standing and walking) while Dr. Das increased [Plaintiff's] capacity for standing and walking." (Decision, Doc. No. 8-2 at PageID 62.) The ALJ also explained that the record contained "no compelling evidence to support a finding of medical improvement in [Plaintiff's] capacity to stand and walk as suggested by Dr. Das." (*Id.*)

At most, this discussion addresses the consistency factor, which requires ALJs to consider "the evidence from other medical sources and nonmedical sources." 20 C.F.R. § 404.1520c(c)(2). The supportability factor, by contrast, requires ALJs to examine "objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). The ALJ summarily concluded that no compelling evidence supported Dr. Das' opinion without explaining how she considered objective medical evidence and supporting explanations cited and provided by Dr. Das. The ALJ also did not explain her consideration of the supportability factor with respect to the opinions of Dr. Sreenivas or the consultants.

Defendant argues that the ALJ did not err because her analysis "still allow[s] for judicial review of the ALJ's reasoning, and thus any error is harmless." (Mem. in Opp., Doc. No. 11 at PageID 4230.) Defendant asserts that the ALJ need not specifically use the terms "supportability" or "consistency" when addressing these factors. (*Id.*, citing *Gregory R. v. Comm'r of Soc. Sec.*, No. 2:21-cv-1817, 2022 WL 780240, at *6-8 (S.D. Ohio Mar. 15, 2022) (Vascura, M.J.).) Defendant also claims that the ALJ's analysis

"constituted a consideration of both supportability, the lack of support for the increased

capacity, and consistency, the comparison between the two opinions." (Mem. in Opp.,

Doc. No. 11 at PageID 4231.)

Defendant's assertions are not well-taken. The Court agrees that ALJs do not err

merely by omitting the terms "supportability" and "consistency" from their decision, and

that reviewing courts must review the ALJ's explanation of what she actually considered.

The Court has conducted that review and, for the reasons stated above, concludes that the

ALJ did not actually explain her consideration of the supportability and consistency

factors, as the regulations required her to do.

Defendant argues that even if the ALJ erred in this respect, the error is harmless.

(Mem. in Opp., Doc. No. 11 at PageID 4230.) The Court disagrees. "In absence of a

sufficient explanation of supportability and consistency with the record as a whole," the

Court cannot determine that the ALJ's analysis of the state agency medical consultants'

findings is supported by substantial evidence. *See Jacob B. v. Comm'r of Soc. Sec.*, No.

1:20-cv-617, 2022 WL 130761, at *8 (S.D. Ohio Jan. 14, 2022) (Litkovitz, M.J.) (citing

*Ephraim v. Saul*, No. 1:20cv00633, 2021 WL 327755, at *7 (N.D. Ohio Jan. 8, 2021),

*report and recommendation adopted sub nom. Ephraim v. Comm'r of Soc. Sec.*, No.

1:20cv633, 2021 WL 325721 (N.D. Ohio Feb. 1, 2021) ("[A] district court cannot uphold

an ALJ's decision, even if there 'is enough evidence in the record to support the decision,

[where] the reasons given by the trier of fact do not build an accurate and logical bridge

between the evidence and the result.'")). *See also Todd v. Comm'r of Soc. Sec.*, No. 3:20-

cv-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021) (citing *Blakley*, 581 F.3d at

20

409) (The ALJ's error requires remand because "without fuller explanation, this [C]ourt cannot engage in meaningful review of the ALJ's decision."). Accordingly, the ALJ's failure to properly analyze the state agency medical consultants' findings pursuant to 20 C.F.R. § 404.1520c constitutes reversible error because it prejudiced Plaintiff on the merits. This is another reason why the case should be remanded.

## VI. REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746.

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section

405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary and evaluate the evidence of record—including the opinion evidence—under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law, particularly under the standard in *Earley*. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1.   Plaintiff's Statement of Errors (Doc. No. 9) be GRANTED;

2.   The Court REVERSE the Commissioner's non-disability determination;

3.   No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.   This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.   This case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d),

this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).